APPEL, Justice (concurring in part and dissenting in part).
This case presents two issues. As discussed more fully in AFSCME v. State , 928 N.W.2d 21, 44-51 (Iowa 2019) (Appel, J., dissenting), I dissent from the majority's decision upholding the overinclusive and underinclusive classification of public employees entitled to broader collective bargaining rights.
The plaintiffs in this case also ask us to consider whether another aspect of House File 291, 2017 Iowa Acts ch. 2, §§ 6, 14, 22 (codified at Iowa Code §§ 20.9, .26, and § 70A.19 (2018)), fails rational basis review. The majority rejects the plaintiffs' challenge. For the reasons below, I concur with the majority on this issue.
House File 291 prohibits public employers from administering payroll deduction for employee dues payments to any employee organization and forbids collective bargaining over the subject. Iowa Code § 20.9(3) ; id. § 70A.19. It also forbids collective bargaining over "payroll deductions for political action committees or other political contributions or political activities." Id. § 20.9(3). The law allows, however, any other type of payroll deduction for any purpose. For example, payroll deduction may be used for dues to a professional organization, so long as it does not qualify as an employee organization under Iowa Code section 20.3 (2018). Id. §§ 70A.17A, .19. Membership dues may not be subject to deduction for groups such as the Iowa State Education Association (ISEA) or the Davenport Education Association that essentially wear two hats, one as an employee organization and the other as a professional organization for teachers.
Why? The district court thought there might be money to be saved. But the record indicates that it would cost more money to remove the payroll deductions for ISEA and similar organizations than to *21 just leave well enough alone. In short, the dues checkoff provision of the statute in fact imposes costs. If cost savings were the sole reason to support the statute's treatment of union dues checkoff, I would likely find it invalid.
However, the real purpose behind the action is obvious. The legislature intended not to save money, but to weaken unions by making it more difficult for them to collect dues. As a matter of policy, the legislature is free to promote, or hinder, the ability of public employee unions to engage in collective bargaining. The means chosen to make unionization of public employees more difficult-elimination of dues checkoff-rationally achieves that goal. There is no problem of overinclusiveness or underinclusiveness here. See LSCP, LLLP v. Kay-Decker , 861 N.W.2d 846, 859 (Iowa 2015) ; Racing Ass'n of Cent. Iowa v. Fitzgerald , 675 N.W.2d 1, 7-8 (Iowa 2004).
As pointed out by the union in this case, while the legislature sought to undercut unions in its approach to dues checkoff in House File 291, it did not repeal or amend Iowa Code section 20.1(1). That provision provides, "The general assembly declares that it is the public policy of the state to promote harmonious and cooperative relationships between government and its employees by permitting public employees to organize and bargain collectively ...." Iowa Code § 20.1(1).
Oftentimes, legislative expression of general goals of a statute can be helpful in interpreting ambiguous provisions of a statute. But the legislative language dealing with union dues checkoff is not ambiguous. It is quite clear. The union is not really arguing that Iowa Code section 20.1 should be used as an aid in statutory interpretation. What the union advances is a kind of legislative estoppel theory-having declared a general goal in the introductory language of a statute, the legislature cannot undermine that goal through subsequent legislative classifications.
But while a general prefatory provision of a statute may be used as a tool of statutory interpretation, such general language cannot be used to suspend or invalidate subsequent unambiguous legislation. And I do not think that use of general prefatory language in a statute prevents the legislature from enacting subsequent legislation that cuts against or limits that general purpose. It may be that the legislature is engaging in political messaging that some might find objectionable, namely, purporting to generally promote collective bargaining while enacting legislation specifically designed to undermine it. But that is a political problem, not a legal one.
For the above reasons, I concur on the issue of dues checkoff. I dissent on the classifications in House File 291 relating to "public safety employees."
Cady, C.J., and Wiggins, J., join this concurrence in part and dissent in part.